IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

JEFFREY W. GUENTHER,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C16-2019

REPORT AND RECOMMENDATION

TABLE OF CONTENTS

I.    INTRODUCTION ................................. 2

II.   PROCEDURAL BACKGROUND ....................... 2

III.  PRINCIPLES OF REVIEW .......................... 3

IV.  FACTS ........................................ 5
    A.   Guenther's Education and Employment Background ............ 5
    B.   Medical Evidence Pertinent to Objections Raised by Guenther ..... 5

V.   CONCLUSIONS OF LAW ........................... 7
    A.   ALJ's Disability Determination ....................... 7
    B.   Objections Raised by Claimant ....................... 9
        1.   Fully and Fairly Developed Record — IQ Testing ........ 10
        2.   Dr. Breitenstein's Opinions ..................... 13
        3.   RFC Assessment ........................... 15

VI.  CONCLUSION .................................. 16

VII. RECOMMENDATION ............................... 17

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Jeffrey W. Guenther on March 21, 2016, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Guenther asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Guenther requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

Guenther filed his applications for disability benefits and SSI benefits on August 15, 2012, alleging disability due to heart attack, herniated discs in the neck, learning disabilities, and comprehension problems. He alleged he became disabled on December 31, 2009. His applications were denied upon initial review, and on reconsideration. On June 11, 2014, Guenther appeared via video conference with his attorney before Administrative Law Judge ("ALJ") Eric S. Basse for an administrative hearing.[1] In a decision dated September 10, 2014, the ALJ denied Guenther's claims. The ALJ determined Guenther was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Guenther appealed the ALJ's decision. On January 16, 2016, the Appeals Council denied Guenther's request for review. Consequently, the ALJ's September 10, 2014 decision was adopted as the Commissioner's final decision.

---

[1] At the administrative hearing, Guenther was represented by attorney Laura Seelau. On appeal, she is represented by attorneys Corbett A. Luedeman and Thomas A. Krause.

On March 21, 2016, Guenther filed the instant action for judicial review. A briefing schedule was entered on May 31, 2016. On August 29, 2016, Guenther filed a brief arguing there is no substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing other work that exists in significant numbers in the national economy. On September 27, 2016, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On October 18, 2016, Judge Leonard T. Strand referred this matter to a magistrate judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Additionally, on August 15, 2016, both parties together filed a joint statement of facts addressing the case's procedural history, testimony from the administrative hearing, and Guenther's medical history. *See* docket number 12. The parties' joint statement of facts is hereby incorporated by reference. Further discussion of pertinent facts will be addressed, as necessary, in the Court's consideration of this matter.

### III. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## IV. FACTS

### A. Guenther's Education and Employment Background

Guenther was born in 1966. He is a high school graduate. While in school, Guenther was enrolled in special education classes. In the past, Guenther worked as a silo construction worker.

### B. Medical Evidence Pertinent to Objections Raised by Guenther

On April 9, 2013, Guenther was referred by Disability Determination Services ("DDS") to Dr. Joseph L. Breitenstein, Ph.D., for a mental status evaluation. Guenther's chief complaints were learning disability and comprehension problems. Guenther reported a significant history of alcohol and marijuana abuse. Specifically, Guenther:

> estimates that he will drink to intoxication which usually entails about 7 beers at least once a week. This may represent an underestimation. As recently as several years ago he was drinking every day and up to an 18-pack a day. He was also smoking marijuana prior to the heart attack and claimed he smoked virtually everyday since he was 13. He has tried meth and cocaine several times. He has had "5 or 6" OWI's and "a couple public intox," as well as a couple arrests for marijuana possession.

(Administrative Record at 496.) Dr. Breitenstein also reviewed Guenther's work history:

> [Guenther] worked at a turkey plant immediately after graduating from high school. He did this for about 6 months and then he joined the carnival and traveled with the carnival for about 10 years or so. Mostly he was setting up rides. He then worked a garbage route for 5 years and then "got myself into trouble" and had to quit that job to go to prison. He then worked at a silo construction company for 13 years until 2009. This business was apparently run by a cousin who was killed in a traffic accident and he stated that he was let go by his cousin's wife who was somewhat puritanical in her outlook and "got rid of the riff-raff that worked there." He has not been a part of any vocational rehabilitation. It does not sound

5

like he is actively seeking employment and conceptualizes himself as disabled.

(Administrative Record at 497.) Upon examination and testing, Dr. Breitenstein diagnosed Guenther with polysubstance dependence in partial remission, a provisional learning disorder, and anti-social personality traits. Dr. Breitenstein offered the following opinion on Guenther's capacity to work:

> [Guenther] appears to have significant impairment in understanding, remembering, and carrying out moderate to complex instructions, particularly written. He has worked successfully at difficult jobs requiring cooperation and appears to basically get along with supervisors and coworkers. He has the ability to maintain concentration, attention, and work pace for repetitive work. He would probably do best in a less stressful, changeful work environment.

(Administrative Record at 499.) Dr. Breitenstein also suggested "IQ testing would further clarify significant occupational impairment within the context of these important factors."[2]

On November 1, 2013, Guenther met with Dr. Craig Sweeney, D.O., for complaints of neck pain. Guenther described his pain as dull and aching over the upper thoracic and lower cervical spine with associated bilateral shoulder pain. He rated his daily pain at 8-10, on a scale of 1 to 10, with 10 being the greatest amount of pain. Guenther also stated that his pain sometimes turns into numbness over his entire left arm. He also stated his grip strength was "less" on his left. Guenther underwent an MRI, and based on the findings, Dr. Sweeney diagnosed Guenther with: (1) severe neuroforaminal narrowing bilaterally at C6-C7, and on the left at C5-C6; and (2) severe multi-level degenerative disease at C2-C6 with diffuse moderate spinal canal narrowing without spinal cord signal abnormalities. Dr. Sweeney recommended facet joint injections, minor pain medication, and neck exercises as treatment.

---

[2] Administrative Record at 499.

6

Guenther returned to Dr. Sweeney regarding his neck pain on May 22, 2014. Guenther indicated his previous facet joint injections provided short-term relief and some overall improvement. On the date of his appointment with Dr. Sweeney, Guenther rated his pain at 10 out of 10. Dr. Sweeney provided Guenther with another set of facet joint injections, and encouraged Guenther to seek physical therapy and perform range of motion exercises as tolerated.

Guenther returned to the pain clinic on July 30, 2014. He, again, reported the facet joint injections only provided short-term relief. He also rated his pain as 10 out of 10. Dr. Shuchita Garg, M.D., recommended and performed an epidural steroid injection with the hope that Guenther would be provided longer pain relief. Dr. Garg also recommended continued physical therapy/exercise and pain relief medication as treatment.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Guenther is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation

of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an

individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined Guenther had not engaged in substantial gainful activity since December 31, 2009. At the second step, the ALJ concluded from the medical evidence Guenther has the following severe impairments: degenerative disc disease; status-post myocardial infarction with stent placement; suspected learning disorder, and history of substance abuse. At the third step, the ALJ found Guenther did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Guenther's RFC as follows:

> [Guenther] has the residual functional capacity to perform light work . . . in that [he] can occasionally balance, stoop, crouch, kneel; but not crawl. [He] should avoid hazards, such as dangerous machinery and unprotected heights, concentrated exposure to cold, heat, humidity, pulmonary irritants. He can occasionally reach overhead. [Guenther] can perform simple, routine tasks with no requirement to write reports and read instructions.

(Administrative Record at 16.) Also at the fourth step, the ALJ determined Guenther is unable to perform his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Guenther could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Guenther was not disabled.

### B. Objections Raised by Claimant

Guenther argues the ALJ erred in three respects. First, Guenther argues the ALJ erred by failing to order IQ testing as recommended by a consultative examining source, and therefore failed to fully and fairly develop the record in this case. Second, Guenther argues the ALJ failed to properly evaluate the opinions of Dr. Breitenstein, and include

Dr. Breitenstein's limitations in Guenther's RFC. Lastly, Guenther argues the ALJ's RFC assessment is flawed and not supported by substantial evidence.

### 1. Fully and Fairly Developed Record — IQ Testing

Guenther argues the ALJ failed to fully and fairly develop the record by not obtaining IQ testing for Guenther. Specifically, Guenther argues the ALJ should have followed consultative examining source, Dr. Breitenstein's suggestion that IQ testing may clarify Guenther's level of disability. Guenther asserts such testing is important because Dr. Breitenstein also opined he "appears to have significant impairment in understanding, remembering, and carrying out moderate to complex instructions, particularly written."[3] Guenther maintains this matter should be remanded for further development of the record as to his ability to understand, remember, and carry out instructions, particularly with regard to IQ testing.

The Commissioner responds that the ALJ had sufficient evidence in the record to make an informed decision without obtaining IQ testing for Guenther. The Commissioner points out that Guenther's administrative level counsel:

> never asked the ALJ or the Appeals Council to order IQ testing, nor did she assert that [Guenther] met Listing 12.05 in either her pre-hearing and post-hearing briefs or at the administrative hearing. Rather, in her pre-hearing brief, [Guenther's] counsel said that due to his learning disability [Guenther] would be limited to simple, routine repetitive work that could be learned in 30 days or less. Notably, the ALJ included this limitation in his RFC finding.

Commissioner's Brief (docket number 15) at 6. The Commissioner concludes Guenther's argument regarding the need for IQ testing is without merit.

---

[3] Administrative Record at 499.

10

An ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Additionally, an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 416.919a(a) ("If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination."). 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination [may be purchased] to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim." *Id.* For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

In his decision, the ALJ thoroughly addressed Guenther's intellectual functioning and ability:

> [Guenther] also alleged a learning disability and comprehension problems in his reconsideration appeal. No mental assessment was completed with the initial application as [Guenther] did not initially allege a mental condition and

> had no mental health treatment. [He] reports completing the 12th grade and working for 12 years as a silo construction service worker. . . . Submitted evidence from school records suggest low average intelligence. [Guenther] is not on medication or in treatment for a mental condition.

(Administrative Record at 18.) The ALJ concluded that the evidence in the record indicated "a restriction to simple work tasks and reading/writing restrictions are appropriate."[4] Accordingly, the ALJ's RFC assessment limited Guenther to performing "simple, routine tasks with no requirement to write reports and read instructions."[5] Significantly, the ALJ's limitations are consistent with Dr. Breitenstein's opinion that Guenther "worked successfully at difficult jobs requiring cooperation and appears to basically get along with supervisors and coworkers. He has the ability to maintain concentration, attention, and work pace for repetitive work."[6]

Under the circumstances, I believe there is sufficient evidence in the record for the ALJ's disability determination, and therefore, a consultative examination for IQ testing was not required. *See Barrett*, 38 F.3d at 1023. Moreover, I believe the ALJ fully and fairly developed the record and addressed his findings in his decision as it pertains to Guenther's intellectual functioning and RFC assessment. *See Cox*, 495 F.3d at 618. Therefore, even if inconsistent conclusions could be drawn on this issue, I recommend the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

---

[4] Administrative Record at 19.

[5] *Id.* at 16.

[6] *Id.* at 499.

## 2. Dr. Breitenstein's Opinions

Guenther argues the ALJ failed to properly consider and develop the opinions of Dr. Breitenstein, a consultative examining source. In particular, Guenther argues the ALJ failed to incorporate into his RFC Dr. Breitenstein's opinion that Guenther should be limited to working in a low stress environment. Guenther maintains this matter should be remanded for further consideration of Dr. Breitenstein's opinions, including his limitation of Guenther to a low stress work environment.

In considering medical evidence, an ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. §§ 404.1527(c), 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

Furthermore, when considering a physician's RFC assessment, an ALJ is not required to give controlling weight to the physician's assessment if it is inconsistent with other substantial evidence in the record. *Strongson*, 361 F.3d at 1070; *see also Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"). "If the RFC assessment conflicts with an opinion from a

medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling, 96-8p (July 2, 1996).

In his decision, the ALJ addressed Dr. Breitenstein's opinions as follows:

> Psychological consultative examiner, Joseph Brietenstein [(*sic*)], PhD, opined that [Guenther] appears to have significant impairment in understanding, remembering, and carrying out moderate to complex instructions, particularly written. "He has worked successfully at difficult jobs requiring cooperation and appears to basically get along with supervisors and coworkers. He has the ability to maintain concentration, attention, and work pace for repetitive work. He would probably do best in a less stressful, changeful work environment." The consultative examiner's opinions have been considered and given some weight in accordance with the brevity of their examination of [Guenther] and reliance on her [(*sic*)] subjective reports of symptoms, history of treatment, and limitations.

(Administrative Record at 21.) Furthermore, in his RFC assessment for Guenther, while the ALJ did not specifically address the issue of a low stress environment, he did limit Guenther to performing "simple, routine tasks with no requirement to write reports and read instructions," indicating the need for a low stress job.[7]

Therefore, having reviewed the entire record, and considered the ALJ's discussion of the objective medical evidence and review of Guenther's treatment history, I find that the ALJ properly considered and weighed the opinion evidence provided by Dr. Breitenstein. Specifically, not only did the ALJ grant Dr. Breitenstein's opinions "some" weight, but he also addressed inconsistencies within Dr. Breitenstein's opinions where they differed from the record as a whole. Therefore, I conclude the ALJ properly considered and applied the factors for evaluating a consultative examiner's opinions, and

---

[7] Administrative Record at 16.

14

properly granted "some" weight to Dr. Breitenstein's opinions. *See Wiese*, 552 F.3d at 731. Accordingly, even if inconsistent conclusions could be drawn on this issue, the ALJ's conclusions should be upheld because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. RFC Assessment

Guenther argues that the ALJ's RFC assessment is flawed. Specifically, Guenther argues that the ALJ's RFC assessment is incomplete because it does not properly account for all of his impairments and functional limitations. Guenther also argues that the ALJ's RFC assessment is not supported by substantial evidence in the record. Guenther maintains this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

In determining Guenther's RFC, the ALJ thoroughly addressed and considered Guenther's medical history and treatment for his physical and mental complaints.[8] In particular, the ALJ addressed Guenther's medical records from 2013 and 2014 concerning his neck pain.[9] The ALJ specifically noted Guenther only underwent conservative treatment for his neck and back pain complaints. Furthermore, the ALJ also properly considered and thoroughly discussed Guenther's subjective allegations of disability in making his overall disability determination, including determining Guenther's RFC.[10] Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Guenther's medical records, observations of treating and non-treating physicians, and Guenther's own description of his limitations in making the ALJ's RFC assessment for Guenther.[11] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Guenther's assertion that the ALJ's RFC assessment is flawed is without merit.

## VI. CONCLUSION

I find the ALJ fully and fairly developed the record with regard to Guenther's intellectual functioning and included pertinent mental health limitations in his RFC assessment for Guenther. I also find the ALJ properly considered and weighed the

---

[8] *See* Administrative Record at 17-19, 21-22 (providing a thorough discussion of Guenther's overall medical history and treatment).

[9] *See* Administrative Record at 17-18.

[10] *Id.* at 19-21 (providing a thorough discussion of Guenther's subjective allegations of disability).

[11] *Id.* at 17-22 (providing a thorough discussion of the relevant evidence for making a proper RFC determination).

16

opinions of Dr. Breitenstein. Finally, I find the ALJ properly determined Guenther's RFC based on a fully and fairly developed record. Accordingly, I believe the ALJ's decision is supported by substantial evidence and should be affirmed.

## VII.  RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **AFFIRM** the final decision of the Commissioner of Social Security and enter judgment against Guenther and in favor of the Commissioner.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this 27th day of December, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA